Date signed March 06, 2008



_____
PAUL MANNES
U. S. BANKRUPTCY JUDGE

### UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| FIRSTPAY, INC., | : | Case No. 03-30102PM |
| | : | Chapter 7 |
| Debtor. | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |
| MICHAEL G. WOLFF, TRUSTEE, | : | |
| Plaintiff, | : | |
| vs. | : | Adversary No. 05-1695PM |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| Defendant. | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |

### MEMORANDUM OF DECISION

The Defendant, the United States of America,[1] filed a timely Motion on December 31, 2007, to alter or amend, pursuant to Fed. R. Bankr. P. 9023, this court's Order entered December 19, 2007, granting the Plaintiff's Motion for Summary Judgment on Counts II and IX of the Complaint.

The Complaint was filed in nine Counts as follows:

Count I - For a Declaratory Judgment that the Defendant had no claims against those of the Debtor's clients who made payments to the Debtor on account of taxes owed to the Defendant, which payments were not transmitted to the Defendant. These clients did not receive

---

[1] The court may refer to the Defendant either as the United States or the IRS.

notice of the non-payment on their account because of unauthorized changes of address of the clients that was enabled by the Defendant.

<u>Count II</u> - For preference claims on account of payments made within 90 days of the filing of this bankruptcy case.  11 U.S.C. § 547(b)(4)(A).

<u>Count III</u> - For preference claims on account of payments made between 90 days and one year before the filing of this bankruptcy case, based on the contention that the Defendant was an insider at the time of the transfer.  11 U.S.C. § 547(b)(4)(B).

<u>Count IV</u> - For avoidance of a fraudulent conveyance.  11 U.S.C. § 548.

<u>Count V</u> - For avoidance of a fraudulent conveyance.  MD. CODE ANN., COM. LAW § 15-204.

<u>Count VI</u> - For avoidance of a fraudulent conveyance.  MD. CODE ANN., COM. LAW § 15-205.

<u>Count VII</u> - For avoidance of a fraudulent conveyance.  MD. CODE ANN., COM. LAW § 15-206.

<u>Count VIII</u> - For avoidance of a fraudulent conveyance.  MD. CODE ANN., COM. LAW § 15-207.

<u>Count IX</u> - For turnover of the avoided transfers.  11 U.S.C. § 550(a).

By an Order entered August 2, 2006, this court granted, in part, the Motion of the United States for Summary Judgment and dismissed Counts I, II and III.  The remaining Counts came before the court for trial on August 9, 2006.  The court found in favor of the United States and by Order entered on August 17, 2006, dismissed the remaining Counts of the Complaint.

The Trustee filed a timely Notice of Appeal, and in due course the matter was heard by the United States District Court for the District of Maryland.  In a published opinion, *Wolff v. United States*, 372 B.R. 244 (D. Md. 2007), that court affirmed this court's dismissal of all Counts other than Counts II and IX and remanded the case to this court for "proceedings not inconsistent with this Opinion."  The Trustee renewed his Motion for Summary Judgment.  After a hearing, the court passed an Order on December 19, 2007, holding that there were no genuine issues of material fact, granting judgment in favor the Trustee on Counts II and IX, determining that payments of $28 million made by the Debtor to the United States within the 90 days prior to the filing of the petition were avoidable preference payments, and entering a money judgment in

that amount in favor of the Trustee with interest at the applicable federal rate from June 24, 2005. The instant Motion followed.

After a decision on appeal, it is the duty of the Bankruptcy Court to comply with the mandate of the appellate court and to obey the directions therein without variation. As the Court stated in *Briggs v. Pennsylvania R. Co.*, 334 U.S. 304, 306 (1948):

> In its earliest days this Court consistently held that an inferior court has no power or authority to deviate from the mandate issued by an appellate court. The rule of these cases has been uniformly followed in later days . . . . (Interior citations omitted.)

"The mandate rule 'compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or *impliedly* decided by the appellate court.'" *United States v. Ben Zvi*, 242 F.3d 89, 95 (CA2 2001)(*quoting United States v. Bell*, 5 F.3d 64, 66 (CA4 1993)).

As described by the District Court, Firstpay's *modus operandi* was to deposit all of its clients' money into a single fund, with occasional payments to the IRS to satisfy or partially satisfy clients' outstanding tax obligations. Money paid by one client was used to pay the liabilities of a different client. *Wolff v. United States* at 247. The Trustee sought information from the IRS as to how payments made by it were credited to the accounts of Firstpay's taxpayer clients, but throughout this litigation, the IRS citing confidentiality concerns, refused to disclose to the Trustee or the court how the millions of dollars paid in the preference period were applied. The IRS is said to be pursuing collection efforts against these unfortunate victims of Firstpay's defalcations, and more than 50 such former clients filed proofs of claim that sound in the nature of theft or embezzlement. Because of the position taken as to disclosure of information by the IRS, the Trustee cannot verify the merits of these claims.

Finally, as the District Court states:

> It is undisputed that the transfer of funds from the Debtor to the IRS in this case was a transfer of an interest of the Debtor in property and that the Debtor was insolvent at the time of the transfer. Before the Bankruptcy Court, the IRS admitted that it was not a creditor of Debtor, and, thus, that it had received more than it would have received in a distribution under Chapter 7. Accordingly, having met the elements set forth in § 547(b)(3) and (5), the Trustee, to prove his preference case under § 547(b), needed only to show that the payments to the IRS were made "to or

> for the benefit of a creditor" under § 547(b)(1), that they were made "for or on account of an antecedent debt owed by the debtor" under § 547(b)(2) and that they were made pursuant to the criteria set forth in § 547(b)(4).

*Id*. at 251.

On appeal, the District Court noted this court's error in its holding that because the IRS was not a creditor of the Debtor that a preference action would not lie in this case. This court overlooked the fact that the transfers in question were for the benefit of other creditor entities; namely, those of the Debtor's clients who were fortunate enough to have a portion of their obligations transmitted to the IRS, thereby satisfying all or part of those clients' obligations. In a nutshell, as the District Court stated, the Debtor's payments to the IRS were made "for the benefit a creditor" and were made "on account of an antecedent debt owed by the debtor." *Id.* at 252.

> [T]he 'antecedent debt' referred to in § 547(b)(2) can be located in the Debtor's debts to its taxpayer clients. Having found that a debtor/creditor relationship existed as between the Debtor and its clients, the Court now finds that the payments made to the IRS by the Debtor were made on account of the Debtor's antecedent debts to its own clients.

*Id*.

In sum, as noted by the District Court, the Trustee established each and every element of a preference claim under § 547(b) as to all transfers to the IRS made within 90 days before the filing of the petition. The IRS elected not to disclose the application of those payments, so it may not now urge that some taxpayers got credit for an amount less than they would have received if the transfer were not made in this massively insolvent case.

Relying upon *Begier v. Internal Revenue Service*, 496 U.S. 53 (1990), the Defendant asserts that all the payments made by the Debtor were trust fund obligations regardless of whether the funds came from the Debtor's general account or a segregated account. But, *Begier* involved payments of withholding taxes by the employer from its general account, not, as here, payments by a third party. Moreover, one need only turn to *Begier* for an answer to this issue:

> We begin with the language of 26 U.S.C. § 7501, the Internal Revenue Code's trust-fund tax provision: "Whenever any person is required to collect or

>   withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States."

*Id.* at 59.

Firstpay is not the person required to collect or withhold and to pay over the tax. This special trust provision applies to its clients. The fact that Firstpay was a faithless agent does help the IRS. "[S]ection 7501 obviously intends to give the United States the advantages of a trust beneficiary with respect to collected and withheld taxes. Unfortunately, it does not always succeed in doing so." *Id.* at 70 (Scalia, J., concurring). This is one such case where § 7501 falls short in protecting the fisc.

Finally, the IRS neither pleaded nor proved any of the affirmative defenses to a preference action set out in § 547(c). It had the burden of proving the nonavoidability of the transfers. 11 U.S.C. § 547(g). Even if such defenses existed, they were waived by not being pled in the answer. *In re Adbox, Inc*., 488 F.3d 836 (CA9 2007).

An appropriate order will be entered.


cc:   Plaintiff
      Defendant
      Plaintiff's Counsel
      Defendant's Counsel

**End of Memorandum of Decision**